272 P.2d 591

SOUTH CACHE WATER USERS ASS'N v. STOCKHOLDERS OF SOUTH CACHE WATER USERS ASS'N et al. (Hyrum Irr. Co., third party plaintiff and appellant et al.)

No. 8137.

Supreme Court of Utah.

July 23, 1954.

Preston & Harris, Logan, J. Stuart Mc-Master, Thomas O. Parker, U. S. Bureau of Reclamation, Salt Lake City, for respondent.

Clyde & Mecham, Salt Lake City, for appellant.

WORTHEN, Justice.

Defendant and protestant, Hyrum Irrigation Company, herein called Hyrum appealed from a decree holding the amendatory repayment contract between the United States and South Cache Water Users Association, herein called South Cache, is a valid obligation against South Cache and its stockholders, including Hyrum and that the stock of South Cache had been properly assessed.

A history of the organization of South Cache and its purposes is necessary.

The following facts are not in dispute:

For the purpose of being able to negotiate with the United States of America for the construction of a reclamation project, South Cache was organized as a Utah Corporation.

Its stockholders are all corporations, each interested in providing water or securing a more adequate supply (and making its use more beneficial).

At the time of its organization South Cache had no assets, no water rights, no dams, reservoirs, canals, or irrigation works of any kind.

On October 9, 1933, South Cache entered into a contract with the United States by the terms of which the United States acting through the Bureau of Reclamation agreed to construct certain irrigation works in Cache County, Utah, for the storage, diversion, and beneficial use of the water of Little Bear River and its tributaries for irrigation and other purposes known as the Hyrum Project, consisting of the Hyrum Reservoir, the Wellsville Canal (including a pumping plant in connection therewith); the Hyrum-Mendon Canal; and the Hyrum Feeder Canal. The contract required South Cache at is own cost to operate and maintain said project and to provide, or cause to be provided adequate security to insure the payment of all sums and charges to be paid to the United States. The furnishing of said security was made a condition precedent to any expenditure by the United States.

South Cache, also, agreed to pay to the United States for said works and water supply, the costs of constructing said project not to exceed $930,000 in 40 equal annual installments following the completion of said project.

The Government in connection with the project acquired certain water rights in and from the Little Bear River and its tributaries, represented by water appropriations and filings.

Thereafter, South Cache entered into contracts with Hyrum and the other corporate stockholders for sale of stock in said corporation.

Hyrum was incorporated in August, 1933, and its articles declare the purposes for which it was formed (which include the following):

"To contract with the United States through the Federal Reclamation Bureau or with any corporation organized to contract with the United States for the erection of reservoirs or canals with a view to obtaining additional irrigation water for the stockholders of this corporation and to make such guarantees and to enter into such agreements as shall be required by the laws of the United States and the rules of said Reclamation Bureau in order to carry into effect the powers herein granted."

On the 5th day of January 1934, a subscription contract was executed between Hyrum and South Cache whereby Hyrum subscribed for 3,300 shares of South Cache stock, and on the same day executed its mortgage in favor of the United States and South Cache pursuant to the agreement between the United States and South Cache.

The United States made its capital investment and completed the project. On the 10th day of April, 1943, the district

court entered a decree holding the contracts, mortgages and proceedings heretofore referred to, to be valid.

Thereafter, South Cache requested the United States to make a study of the Hyrum Project to determine if relief by way of longer time and smaller annual payments could be provided. After studies were made Congress authorized the relief requested, and on May 24, 1950, South Cache entered into an amendatory contract with the United States by the terms of which the time for making payments was extended 16 years beyond the original 40 year period without interest; the basic annual installments were substantially reduced and the annual per share assessment on the stock of South Cache was reduced from $2.09 to $1.55.

The present action was filed asking the district court to approve and confirm the amendatory contract. Hyrum protested the approval of the amendatory contract contending that the contract had not been properly adopted by South Cache, nor ratified by its stockholders.

Hyrum, also, filed a counterclaim against South Cache and all its stockholders contending that South Cache was not properly assessing its stock—that the stock should be assessed equitably in accordance with benefits received—to raise funds to pay the United States for the project costs, as well as for operation and maintenance.

Hyrum assigns error on the part of the Court in 5 particulars which go to two general propositions: First, Hyrum contends the court erred in holding that assessments levied on the stock of South Cache for the purposes of paying project construction costs must be levied equally against all stock; second, that the court erred in holding that the amendatory contract was valid.

■ Defendant's principal contention is that it does not receive from the Project benefits equal to the benefits received by other stockholders; that the Hyrum-Mendon Canal and the Wellsville Canal with pumping plant were new canals built to irrigate land not theretofore irrigated, costing approximately $200,000; that Hyrum is located upstream from Hyrum reservoir; that its diversion point is several miles above the reservoir, and the water so diverted is applied to Hyrum Bench, all of which is at a higher elevation than the reservoir; that Hyrum gets no storage water and is benefited by the reservoir only to the extent that it may exchange its storage water with Wellsville East Field Irrigation Company for water which Hyrum takes out at its diversion dam above the reservoir.

Hyrum contends that the benefits it received under the project are not equal to, but are far less than the benefits enjoyed by other stockholders.

Hyrum grounds its contention, that all assessments levied against South Cache's stock must be equitable and not equal, upon the articles of incorporation of South Cache. It is provided in Article 15:

" * * * At the time such shares of stock are sold to the subscriber therefor, such subscriber shall be required to pay an assessment of fifty cents per share, and annually on or before the first day of February of each year, the board of directors shall prepare a budget covering the estimated cost of operation, maintenance, *construction work, payments due on contracts* or bond, and any other expense or *costs* for the ensuing year and shall apportion the estimate so prepared by an assessment or assessments *equitably,* but not necessarily equally, against each share of stock outstanding. * * *"

Article 11 provides:

"Revenues for the accomplishment of the purposes of this corporation shall be raised:

"(a) From income arising from the carriage, rental or delivery of water for irrigation or other purposes or from the sale, rental, lease, or furnishing otherwise of electric or other power, or power privileges, or from any other lawful operations of the corporation.

"(b) From assessments against the shares of stock of the corporation so far as they may be from time to time necessary to meet:

"1. *The costs of construction,* improvement, enlargement, betterment, repairs, operation and maintenance of the irrigation and other works of the corporation, or of those managed, controlled, operated or maintained by it.

"2. *Payments due the United States under any contract or contracts between the United States and the corporation,* or payments under any contract between the United States and other parties which are assumed or guaranteed by the corporation.

"3. Deficiencies caused by the failure of some of the shareholders of the corporation to pay assessments upon their share of stock.

"4. Any and all lawful obligations of the corporation.

"(c) *Assessments against the outstanding shares of stock for the raising of revenues, as aforesaid, shall be equitably but need not be equally assessed.*

"This provision for equitable but unequal assessments is to take care of situations where expenditures are made or are necessary *for purposes that are of benefit to a part only of the stockholders,* or where *existing or future contracts with the United States* or the laws or regulations of the United States *now or hereafter require unequal assessments,* or where unequal assessments are required or permitted by the terms or conditions *of any contract between the corporation and any stockholder."* (Italics ours.)

The terms of the subscription contract and the mortgage require that assessments levied to pay for project construction costs be equal or proportionate.

We cannot perceive wherein the expenditures by the United States in establishing the Hyrum Project were made for a part only of the stockholders of South Cache, nor wherein Hyrum was not equally benefited. It would be impossible to measure with exactness the quantity or quality of the benefits conferred on the various stockholders of South Cache or to say that the individual stockholders of Hyrum all received equal benefits.

It is sufficient to observe that each subscriber of stock believed it would receive such benefits that it was justified in lending its aid to secure, and to pledge its property for payment of the project.

The subscription contract and the mortgage executed by Hyrum were authorized by resolution of the stockholders of Hyrum the same day the contract and mortgage were executed. In the Whereas clauses of the resolution it is recited:

"2. Whereas, the construction of said irrigation works by the United States will make it possible for the Hyrum Irrigation Company to secure a supply of water, by exchange or otherwise, for the use of its stockholders and others whose lands are so situated that they may be served through and by means of the company's irrigation system, and

"3. Whereas, the Company is in need of an additional supply of water and desires to secure the same from said irrigation works to be constructed by the United States, and

"5. Whereas, the Association has entered into that certain contract with the United States dated October 9, 1933, for the construction of said irrigation works, and

"7. Whereas, the construction of said irrigation works by the United States depends among other things upon the United States being adequately protected, secured and insured in the payment of all money which it expends in so doing, and

"9. Whereas, to enable the Company to participate in the construction of said irrigation works by the United States it is necessary that the Board of Directors and the President and the Secretary of the Company be authorized and empowered to subscribe for stock in said South Cache Water Users' Association and/or to make any and all contracts, mortgages and other instruments necessary or desirable with said Association or with the United States or with both for the purpose of participating in or securing the construction of said irrigation works, and"

The Resolution provides:

"11. Now, Therefore, Be It Resolved by the stockholders of the Hyrum Irrigation Company that the Board of Directors of the Company and its President and its Secretary be and are hereby directed, authorized and empowered to subscribe for 3300 shares of stock of the South Cache Water Users' Association upon the terms and conditions as set out in the form of contract submitted to the stockholders of the Company by the United States at this meeting, a copy of which, marked 'Exhibit A,' is attached hereto and made a part hereof, or upon such other terms and conditions as the Board of Directors may see fit or find it necessary or desirable to make."

The resolution directed, authorized and empowered the Board of Directors of Hyrum and its President and Secretary to mortgage to the United States and to South Cache all the property and assets of Hyrum upon the terms and conditions set forth in the form of mortgage submitted to the stockholders by the United States.

It was further specifically provided in said resolution as follows:

"14. Be It Further Resolved that the President of this Company, and in the event of his absence or inability to act, the Vice-President be and hereby is authorized and empowered to represent this Company at all meetings of the stockholders of the South Cache Water Users' Association and for and on behalf of this Company is hereby authorized to waive notice of any stockholders' meetings of said Association and is further authorized to vote as he may see fit or proper (whether for or against) upon any *contract, proposition,* business, question, or *matter coming before any stockholders' meeting* or at any election held by said Association." (Italics ours)

The subscription contract mentioned in said resolution and which subscription contract was submitted to the stockholders of Hyrum by the United States contains the following:

"8. Whereas, the Association *will levy assessments upon its stock* from time to time *for the purpose of raising funds with which to meet installments due the United States under said Association-Government contract* and to raise funds for *other expenses and charges* of said Association; and

\*　\*　\*　\*　\*　\*

"Purchase Price of Shares of Stock

"11. The Company shall pay, for the benefit of the United States, as the *purchase price* of the shares of stock in the Association herein subscribed for, *that proportion of the total sums and charges required to be paid by the Association to the United States* under

said Association-Government contract, that *the number of shares of Association stock subscribed for by the Company shall bear to the total number of shares of such stock outstanding* and assessable at the time the construction of the works described in Article 2 hereof is authorized by the Secretary, * * *." (Italics ours)

The mortgage declares that the purchase price of each share of Hyrum's stock is the exact purchase price of every other share of stock outstanding and assessable. The only means provided for payment of stock was assessments levied by South Cache. Hyrum's mortgage declares that the purchase price of each share of its stock is identical to the purchase price of every other share of stock outstanding and assessable.

Article 9 of South Cache's Articles of Incorporation provided that one share of stock is entitled to the same amount of water per annum as every other share.

Let it be conceded that Hyrum could have provided in its subscription contract and mortgage, if the United States had consented, that its assessments be equitable and in proportion to its claimed smaller benefits.

Let it, likewise, be conceded that had Hyrum insisted and had South Cache and the Government consented, that it might have paid a smaller price per share for its stock than did the other stockholders, but

no such provision was made. Hyrum executed the identical form of subscription contract and mortgage furnished by the United States that was executed by the other stockholders.

Regardless of what is contained in the Articles of Incorporation of South Cache (the United States was not a party to those articles), Hyrum cannot avoid the obligations entered into under its subscription contract and its mortgage.

To require South Cache to levy assessments against Hyrum less than the assessments levied against other stock of South Cache would mean either that the United States would not be paid when its payments were due, or that other stockholders of South Cache would be required to pay part of the purchase price for Hyrum stock.

The trial court held that all assessments against the stock of South Cache for the initial construction costs should be made equal and proportional, but that assessments against the stock to meet subsequent construction costs and for operation and maintenance should be levied equitably and need not be equal. With this ruling we agree.

Hyrum contends that the amendatory contract is not a valid contract; that the total amount required to be paid under the original and amendatory contracts exceeded the amount which South Cache undertook to pay for said project under the original contract; that the amendatory con-

tract was not executed by a legal board of directors authorized to execute the same, nor was it ratified by the stockholders.

We believe that Hyrum cannot assail the validity of the amendatory contract.

It was stipulated during the trial that South Cache pursuant to a resolution of its Board of Directors requested the United States to make an investigation and study for the purpose of extending the payment period of the project and to afford relief by providing smaller assessments. The testimony of Hyrum's President and a member of the Board of Directors of South Cache discloses that he personally discussed the matter with representatives of the Reclamation Bureau. It is, likewise, established that one of Hyrum's representatives made the motion at a special director's meeting to fix the assessment rate per share under the proposed amendatory contract, at $1.55. It is established that Hyrum through its representatives has participated in and voted its stock at all stockholders meetings; has voted on every assessment levied on an equal basis; and has paid all assessments levied since the project was completed.

It is further established that the resolution of Hyrum referred to herein authorizing the President of Hyrum to represent it at all stockholders meetings has never been rescinded or modified.

It is established that ever since the construction of the project Hyrum has been assessed and has paid its assessments on the basis provided for in the subscription contract and the mortgage to wit: on an equal or proportionate basis.

The amendatory contract was authorized by a resolution of the stockholders of South Cache adopted at a meeting duly held on May 24, 1950, at which the following resolution was adopted:

## "Resolution

"Be It And It Is Hereby Resolved by the stockholders of the South Cache Water Users' Association, that the Board of Directors of said association and it's [sic] President and Secretary be, and they are hereby authorized, directed and empowered to execute and deliver for and on behalf of said association, an amendatory contract with the United States for the repayment of the construction cost of the Hyrum Project on the terms and conditions contained in the form of contract submitted to, and considered at this meeting."

On May 24, 1950, at a special meeting of the Directors of South Cache the following resolution was adopted:

## "Resolution

"Be It And It Is Hereby Resolved by the Board of Directors of the South Cache Water Users' Association, that the President and Secretary of said association, be, and they hereby are authorized, directed and empowered to

sign, seal, and deliver for and on behalf of said association an amendatory contract with the United States for the repayment of the construction cost of the Hyrum Project on the terms and conditions contained in the form of contract submitted to and considered at this meeting."

It is established that at the time the Board of Directors of South Cache authorized the President and Secretary to execute said amendatory contract, they had not qualified by filing their oaths of office.

Thereafter, and on November 13, 1951, the Directors of South Cache by resolution ratified and approved the action of South Cache in making and executing said amendatory contract and declared said amendatory contract to be binding and the legal obligation of South Cache.

The Board of Directors having been authorized by the stockholders to execute the contract we perceive of no valid objection to the validity of the contract under the facts herein set out.

The trial court held the amendatory contract to be lawful, valid and a binding obligation upon South Cache, and its stockholders. With this ruling we agree.

The judgment is affirmed, costs to respondent.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.